United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 13, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-31585** |
| **PEARL RESOURCES LLC** | § | |
| **and** | § | **CHAPTER 11** |
| **PEARL RESOURCES OPERATING CO.** | § | |
| **LLC,** | § | |
| | § | |
| Debtors. | § | |
| _____ | § | |
| **TEXAS GENERAL LAND OFFICE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-3169** |
| | § | |
| **PEARL RESOURCES LLC** | § | |
| **and** | § | |
| **PEARL RESOURCES OPERATING CO.** | § | |
| **LLC,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>
### *Resolving ECF Nos. 173 & 174*

Pending before the Court are two matters self-styled as (1) "Glo's Motion To Strike Expert Report, Rebuttal Report, And Expert Testimony Or In The Alternative To Strike Portions Of The Expert Report, Rebuttal Report, And Limit Expert Testimony"[1] filed by the Texas General Land Office on April 28, 2023, and (2) "Pearl Resources, LLC's and Pearl Resources Operating Co., LLC's Motion To Exclude Opinion Testimony Of James Gregory Cloud, P.E"[2] filed by Pearl on May 19, 2023. On September 26, 2023, the Court held a hearing and took these matters under

---

[1] ECF No. 173.
[2] ECF No. 174.

advisement. For the reasons  stated below, the Court finds that both challenges are hereby granted in part and denied in part.

## I. BACKGROUND

1. On March 3, 2020, Pearl Resources LLC and Pearl Resources Operating Co. (collectively "*Pearl*") filed for relief under chapter 11 of the United States Bankruptcy Code.[3]

2. On May 28, 2020, Texas General Land Office ("*GLO*") filed a complaint for declaratory judgment against Pearl ("*Complaint*").[4]

3. On June 29, 2020, "Defendant, Pearl Resources LLC's Original Answer, Affirmative Defenses and Counterclaim."[5]

4. On August 26, 2020, the Court issued its comprehensive pre-trial scheduling order.[6]

5. On February 7, 2022, the Court abated its comprehensive pre-trial scheduling order and permitted the parties to mediate their dispute.[7]

6. On April 4, 2022, the Court held a status conference and the parties announced that mediation was unsuccessful.[8] On the same date, the Court issued an amended comprehensive pre-trial scheduling order.[9]

7. On November 22, 2022, the Court granted an agreed order granting the "Joint Motion to Extend Scheduling Order Deadline"[10] filed by the GLO and Pearl on November 21, 2023.[11]

8. On January 26, 2023, the Court granted another extension of scheduling order deadlines.[12]

9. On April 28, 2023, GLO filed its Motion to Strike,[13] which was struck for failure to attach a proposed order as required by BLR 9013-1(h).[14]

---

[3] Citations to Debtors' Bankruptcy case, 20-31585, shall take the form "Bankr. ECF No. —." Bankr. ECF No. 1.
[4] ECF No. 1.
[5] ECF No. 5.
[6] ECF No. 16.
[7] ECF No. 82.
[8] ECF No. 86
[9] ECF No. 88.
[10] ECF No. 132.
[11] ECF No. 133.
[12] ECF No. 147.
[13] ECF No. 154.
[14] ECF No. 156.

10. On May 15, 2023, the Court granted the GLO leave to re-file its motion to strike. The Court also granted Pearl leave to file its *Daubert* motion.[15]

11. On May 19, 2023, GLO filed its "GLO's Motion to Strike Expert Report, Rebuttal Report, and Expert Testimony or in the Alternative to Strike Portions of the Expert Report, Rebuttal Report, and Limit Expert Testimony"[16] ("*GLO's Motion*").

12. On May 19, 2023, Pearl filed its "Pearl Resources, LLC's and Pearl Resources Operating Co., LLC's Motion To Exclude Opinion Testimony Of James Gregory Cloud, P.E"[17] ("*Pearl's Motion*").

13. On September 26, 2023, the Court held a hearing on both motions ("*Hearing*") and now issues its instant Memorandum Opinion.[18]

## II.  JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[19] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O), the instant motion contains core matters because the motions seek relief under the United States Bankruptcy Code.

Furthermore, this Court may only hear a case in which venue is proper.[20] Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtors' principal place of business is Houston, Texas.[21] Therefore, venue is proper.

---

[15] May 15, 2023 Min. Entry.
[16] ECF No. 173.
[17] ECF No. 174.
[18] September 26, 2023 Min. Entry.
[19] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[20] 28 U.S.C. § 1408.
[21] ECF No. 1.

This Court must evaluate whether it has constitutional authority to enter a final judgment in this case. Resolving a Daubert challenge results in an interlocutory order because no causes of action are resolved in ruling on a Daubert challenge.[22] Accordingly, the order accompanying this opinion is interlocutory and may be entered without a determination of the Court's constitutional authority to enter a final judgment.[23]

### III. ANALYSIS

**A. *Daubert*/Federal Rules of Evidence 702 and 703 Standard**

Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony.[24] Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.[25]

In *Daubert*, the Supreme Court set forth five factors courts should consider when exercising their gate-keeping function under Federal Rule of Evidence 702 and making their preliminary assessments of whether the reasoning underlying expert testimony is scientifically valid and can properly be applied to the facts in issue.[26] The five factors are: (1) whether the technique in question has been tested; (2) whether the technique has been subject to peer review

---

[22] *Id.*
[23] *Id.*
[24] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[25] *Id.*
[26] *Daubert*, 509 U.S. 579, 592–93 (1993).

and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in the scientific community.[27] "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."[28]

The ultimate inquiry is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact.[29] The answer to that inquiry determines whether the testimony is admissible at trial.[30] *Daubert* applies equally to experts that rely on the application of scientific principles and those that rely on skill- or experience-based observation.[31] A court is not to weigh expert testimony under *Daubert*.[32] Instead, the court's role is to ensure that evidence in dispute is at least sufficiently reliable and relevant to the issue before the fact finder and appropriate for consideration.[33] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky, but admissible evidence."[34] The Court's gatekeeping role is not a substitute for the adversarial process.[35]

*Daubert* and its principles apply to all expert testimony, not just "scientific" testimony.[36] The party proffering expert testimony has the burden of establishing by a preponderance of the

---

[27] *Id.* at 593–94.
[28] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).
[29] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[30] *See id.*
[31] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).
[32] *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying expert's testimony.").
[33] *Id.*
[34] *Daubert*, 509 U.S. at 596.
[35] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).
[36] *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, (1999).

evidence that the challenged expert testimony is admissible and reliable,[37] but need not satisfy each *Daubert* factor.[38] *Daubert* directs that the trial court determine admissibility under Rule 702 by following the directions provided in Rule 104(a).[39] When making its determination under Rule 104(a), "the court is not bound by evidence rules, except those on privilege."[40] Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility.[41] Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit*[42] of the expert.[43] Further, even if the expert is qualified, the basis of his opinion must be reliable and the underlying methodology must have been correctly applied to the case's particular facts in order for his testimony to be relevant.[44] "In short, expert testimony is admissible only if it is both relevant and reliable."[45] Expert witnesses may base opinions on facts or data that the expert "has been made aware of or personally observed."[46] If the facts and data relied on are the sorts that experts in that field would reasonably rely on, then those facts "need not be admissible for the opinion to be admitted."[47] Accordingly, experts may base their opinions on otherwise-inadmissible information, such as hearsay, so long as the information is the sort reasonably relied on in the expert's field.[48]

The purpose of **Rule 703** is largely practical—experts generally base their opinions on information which, to be admissible in court, would entail "the expenditure of substantial time

---

[37] *See* FED. R. EVID. 104(a); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir.1998).
[38] *United States v. Hicks,* 389 F.3d 514, 525 (5th Cir. 2004).
[39] *Daubert,* 509 U.S. at 592.
[40] FED. R. EVID. 104(a).
[41] *Huss v. Gayden,* 571 F.3d 442, 452 (5th Cir. 2009).
[42] *See* Merriam Webster's Dictionary for reference, defining *ipse dixit* as "an assertion made but not proved".
[43] *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, (1997).
[44] *Daubert,* 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 352 (5th Cir.2007).
[45] *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243–44 (5th Cir.2002).
[46] FED. R. EVID. 703.
[47] *Id.*
[48] *Factory Mut. Ins. Co. v. Alon USA L.P.,* 705 F.3d 518, 524 (5th Cir.2013).

in producing and examining various authenticating witnesses."[49]  "Because experts may use their past experience and professional judgment to make critical decisions on the basis of such information outside of court, **Rule 703** was intended 'to bring the judicial practice into line with the practice of the experts themselves when not in court."[50]  Courts nevertheless must serve a gatekeeping function with respect to **Rule 703** opinions to ensure "the expert isn't being used as a vehicle for circumventing the rules of evidence."[51]  "**Rule 703** 'was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."[52]  As stated, the party putting forth the expert testimony has the burden of showing that the testimony is reliable, but "need not satisfy each *Daubert* factor."[53]

### B.  GLO's Motion

In its Motion, GLO moves to exclude the proposed testimony of Dr. Myra Dria ("*Dr. Dria*"), as an expert witness and strike the entire expert report and rebuttal report (collectively "*Reports*") because: (1) Dr. Dria's Reports are procedurally deficient because they do not contain the information required by Federal Rule of Civil Procedure 26(a)(2)(B); (2) Dr. Dria's Reports contain irrelevant information that are not the proper subject of an expert report; (3) Dr. Dria's Reports improperly include contract interpretations, rely upon case law, interpret the law, and draw legal conclusions; and (4) the damage models contained in Dr. Dria's Reports are speculative and not reliable.[54] The Court will consider each in turn.

---

[49] *Id.* (quoting FED.R.EVID. 703, advisory committee's note).
[50] *Id.* at 524 (quoting FED.R.EVID. 703, advisory committee's note).
[51] *Id.* (quoting *In re James Wilson Assocs.,* 965 F.2d 160, 173 (7th Cir.1992)).
[52] *Id.* (quoting *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,* 387 F.Supp.2d 794, 808 (N.D.Ill.2005)). The rule "was never intended to allow oblique evasions of the hearsay rule." *Id.* (quoting *Loeffel,* 387 F.Supp.2d at 808).
[53] *United States v. Hicks,* 389 F.3d 514, 525 (5th Cir. 2004).
[54] ECF No. 173 at 3.

1. **Whether Dr. Dria's Reports are procedurally deficient because they do not contain the information required by Federal Rule of Civil Procedure 26(a)(2)(B)**

GLO asserts that: (a) Dr. Dria failed to produce some of the underlying documents upon which she relied to calculate damages in her original expert report;[55] (b) the supplemental documents provided after Dr. Dria's expert deposition go beyond the documents that Dr. Dria did not disclose in her original expert report[56] and (c) Dr. Dria failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B)(v) by not disclosing that she testified in a case in State court, and that in a different case, her expert testimony had been excluded by the court.[57] The Court will address each in turn.

(a) **Whether Dr. Dria failed to produce the underlying documents she relied upon to calculate damages**

GLO first asserts that Dr. Dria's expert report is procedurally deficient because Dr. Dria failed to produce some of the underlying documents upon which she relied to calculate damages.[58]

In the Fifth Circuit, an expert report must be "detailed and complete" when submitted under Federal Rule of Civil Procedure ("*Rule*") 26(a)(2)(B) to "avoid the disclosure of 'sketchy and vague' expert information."[59] Expert reports that do not provide the basis and reasons for the stated opinions, or that refer to the basis for the opinions only in vague terms, are insufficient under Rule 26(a)(2)(B).[60] Rule 26(e)(1)(A) contemplates situations when a party may supplement a disclosure required by Rule 26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in

---

[55] ECF No. 173 at 19, ¶ 58.
[56] ECF No. 173 at 21, ¶ 61-62.
[57] ECF No. 173 at 22, ¶ 65.
[58] ECF No. 173 at 19, ¶ 58.
[59] *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).
[60] *Id.*

writing."[61] Although the Court allows for rebuttal and supplementary disclosures, "[t]he purpose of rebuttal and supplementary disclosures is just that — to rebut and to supplement."[62] Courts distinguish "true supplementation (e.g., correcting inadvertent errors or omissions) from gamesmanship," whereby permissible supplementation of an expert report occurs in limited circumstances when the party or expert learns that information previously disclosed is incomplete or incorrect in some material respect.[63]

Dr. Dria conceded that certain information, namely data held by the Texas Railroad Commission ("*Railroad Commission*") that she utilized in creating the damage model in her expert report, was not provided to the GLO.[64] Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or harmless."[65] Thus, the analysis turns to whether the failure to disclose was substantially justified or harmless.[66]

The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the trial court.[67] When evaluating whether a violation of Rule 26 is harmless for purposes of Rule 37(c)(1), the court looks to four factors: (a) the explanation for the failure to disclose; (b) the importance of the testimony or evidence; (c) potential prejudice to the opposing party in allowing the testimony or evidence; and (d) the possibility of a continuance to cure such

---

[61] FED. R. CIV. P. 26(e)(1)(A).
[62] *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996).
[63] *Diaz v. Co-Way Truckload, Inc.*, 279 F.R.D. 412,421 (S.D. Tex. 2012) (collecting cases)
[64] September 26, 2023 – Courtroom Hearing (Dr. Myra Dria testifying).
[65] *See Torres v. City of San Antonio*, 2014 WL 7339122, at *1 (W.D. Tex. Dec. 23, 2014).
[66] *See Estech Sys. IP, LLC v. Carvana LLC*, 2023 U.S. Dist. LEXIS 65138, *16 (E.D. Tex. 2023).
[67] *Id.*

prejudice.[68] In conducting this analysis, the Court remains mindful that Rule 26 exists to prevent unfair surprise at trial and to permit the opposing party to prepare for rebuttal reports, to depose the expert in advance of trial, and to prepare for cross-examination.[69] The Court will consider each in turn.

### i.      The Explanation for the Failure to Disclose

Pearl asserts that the Railroad Commission data is publicly available, and that enough data was provided to allow the GLO to recreate the damage calculation produced by Dr. Dria.[70] GLO asserts that regardless of whether the data could be found publicly, the exact timeframes were not readily ascertainable, and Dr. Dria also failed to provide that information in her expert report.[71]

During the hearing on GLO's Motion, GLO's expert, James Cloud ("*Cloud*"), testified as to his attempts at recreating Dr. Dria's damage calculation.[72] Cloud was unsuccessful, mentioning that he used information provided by both the Railroad Commission and the Texas Comptroller of Public Accounts ("*Comptroller*").[73] Dr. Dria later testified that the information used by Cloud was inaccurate, that a qualified expert would have used data from the Railroad Commission rather than the Comptroller, and that her expert report provided a clear road map as to where to obtain the data.[74]

Even assuming *arguendo* that Dr. Dria is correct, placing the burden on the GLO's expert to search for the underlying data because a regular expert would have done it, is an unsatisfactory

---

[68] *Majestic Oil, Inc.*, No. 21-20542, 2023 U.S. App. LEXIS 6593, 2023 WL 2549892, at *3 (5th Cir. Mar. 17, 2023) (brackets in original) (per curium) (quoting *Certain Underwriters at Lloyd's London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020)).

[69] *Payne v. Brayton*, No. 4:15-CV-809, 2017 U.S. Dist. LEXIS 6602, 2017 WL 194210, at *3 (E.D. Tex. Jan. 18, 2017).

[70] ECF No. 196 at 16-17.

[71] ECF No. 173

[72] September 26, 2023 – Courtroom Hearing (James Cloud testifying).

[73] September 26, 2023 – Courtroom Hearing (James Cloud testifying).

[74] September 26, 2023 – Courtroom Hearing (Dr. Myra Dria testifying).

explanation for why the data was not included in the initial disclosure. The mere fact that the information underlying her report is public information did not absolve Dr. Dria from disclosing it. As such, this factor weighs towards exclusion.

### ii.     The Importance of the Testimony or Evidence

Pearl asserts that the damage model in Dr. Dria's expert report provides the basis to their expert's opinion on actual damages.[75] GLO does not argue that this evidence is unimportant but instead suggests that it is unreliable as discussed *infra*.[76]

The expert report is a key part of Pearl's damages evidence; therefore, this factor weighs in favor of including the expert report.[77] The importance of this testimony, however, "cannot singularly override the enforcement of local rules and scheduling orders."[78]

### iii.     Potential Prejudice to the GLO in Allowing the Evidence

GLO asserts that it is highly prejudicial to allow an expert deposition to move forward, and then post deposition, allow the expert to bolster its report and testimony by producing hundreds of pages of documents in response to questions asked or topics discussed during the deposition.[79] Pearl argues that GLO received the data during the discovery period, failed to question the additionally supplied data, failed to question Dr. Dria after receiving the rebuttal report, and failed to mitigate any alleged harm.[80]

Pearl produced the missing Railroad Commission data in advance of the expiration of the discovery deadline.[81] Nevertheless, GLO did not have access to the supplemental data in preparing

---

[75] ECF No. 196 at 15.
[76] ECF No. 173 at 11-19.
[77] *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 707-08 (5th Cir. 2007) (finding that the importance of the challenged expert testimony weighed in favor of inclusion where the testimony was necessary for plaintiff to prove damages).
[78] *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990).
[79] ECF No. 173 at p. 21-22, ⁋ 64.
[80] ECF No. 196 at 17.
[81] ECF No. 196 at 17.

its rebuttal expert report, nor could it have properly considered all of Dr. Dria's information before her expert deposition.[82] Furthermore, GLO argues that it should not be required to incur additional costs when Pearl had the responsibility to properly produce the expert report correctly the first time.[83] While it is true that Pearl did supplement, the harm was already realized when the GLO's expert failed to use the correct data while disputing Dr. Dria's damage calculation.[84] As such, this factor this factor weighs towards exclusion.

### iv.    The Possibility of a Continuance to Cure such Prejudice

The Court must consider the possibility of granting a continuance to cure any prejudice caused by Plaintiffs' violation of Rule 26.[85] Here, discovery has closed and motions for summary judgment are still pending before the Court.[86] GLO received the missing data prior to the conclusion of the discovery period; however, several months have passed yet the GLO has not re-deposed Dr. Dria.[87] The GLO did not have their expert consider Dr. Dria's report in light of the supplemented information because GLO asserts that it should not be forced to pay additional taxpayer money to remedy Pearl's mistake.[88]

The Court agrees that a continuance here would result in additional delay, increase expenses, and likely require additional amendments to the pending dispositive motions.[89] As such, this this factor weighs towards exclusion.

In sum, having weighed the factors, the Court finds that the Rule 26(a) violation was not justified or harmless. The presumptive sanction under Rule 37(c) for failing to comply with Rule

---

[82] ECF No. 173 at 21-22.
[83] September 26, 2023 – Courtroom Hearing (Closing Argument).
[84] September 26, 2023 – Courtroom Hearing (Closing Argument).
[85] *Gamboa v. Centrifugal Casting Mach. Co.*, 2015 U.S. Dist. LEXIS 150700, *8 (S.D. Tex. 2015).
[86] *See e.g.*, ECF No. 157, 175, 187-188.
[87] September 26, 2023 – Courtroom Hearing (Closing Argument).
[88] September 26, 2023 – Courtroom Hearing (Closing Argument).
[89] *See Broussard v. Go-Devil Mfg. Co. of La.*, 2014 U.S. Dist. LEXIS 8580, *31 (M.D. La. 2014).

26(a) is the exclusion of the information in question.[90] In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[91] Nevertheless, it is the duty of this Court to use as many and as varied sanctions as are necessary to "hold the scales of justice even."[92] Rule 37 was designed to maximize the judiciary's flexibility in managing the kind of carelessness and even disobedience displayed by parties, ensuring that legitimate cases are not unnaturally terminated because of technicalities and something less than deliberate intent.[93] Furthermore the law favors resolution of disputes on the merits over dismissal, the "draconian remedy of last resort."[94]

Excluding the damage model produced by Dr. Dria from use for summary judgment or in trial would be especially harsh because it would amount to a dismissal of Pearl's breach of contract claim.[95] Furthermore, Pearl has agreed to a continuance to permit the GLO to take another deposition to cure any prejudice.[96] Currently there is no trial setting and the policy of favoring disposition of a case on the merits supports a short extension for discovery on the narrow damages issue here.[97] Rule 37 permits the court, in addition to or instead of exclusion, to order payment of reasonable expenses, including attorney's fees, caused by the failure of a party that has violated Rule 26(a).[98] The Court finds that payment of the reasonable expenses and attorney's fees for an

---

[90] *Flores v. AT&T Corp.*, 2019 U.S. Dist. LEXIS 118478. *28 (W.D. Tex. 2019).
[91] *Id.*
[92] *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, 2007 U.S. Dist. LEXIS 98619, at *1 (S.D. Tex. 2007).
[93] *See, e.g., Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 15 (1st Cir. 1983) (noting how the Rule does not require exhaustion of every sanction before dismissal or compel one sanction rather than another).
[94] *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994).
[95] *See Jonibach Mgmt. Trust v. Wartburg Enters.*, 136 F. Supp. 3d 792, 809 (S.D. Tex. 2015) (finding that exclusion of damages evidence would be especially harsh as it amounts to a dismissal of a claim, and policy supports disposition of a case on the merits when supplemental disclosures were provided and there is no trial setting).
[96] September 26, 2023 – Courtroom Hearing (Closing Argument).
[97] *See Jonibach Mgmt. Trust*, 136 F. Supp. 3d at 809.
[98] FED. R. CIV. P. 37(c)(1)(A).

additional deposition is an appropriate sanction for the Rule 26(a) violation here. The small delay in reopening discovery on this single issue is harmless and will allow this case to proceed on its merits.[99]

Accordingly, GLO's motion to strike Dr. Dria's Report as procedurally deficient under Rule 26(a)(2)(B) is denied.

The Court will next consider whether the supplemental documents provided after Dr. Dria's expert deposition go beyond the documents that Dr. Dria did not disclose in her original expert report.

### (b) Whether the supplemental documents provided after Dr. Dria's expert deposition go beyond the documents that Dr. Dria did not disclose in her original expert report

Pearl, upon realizing that underlying data had not been provided at Dr. Dria's expert deposition, supplemented Dr. Dria's expert report before discovery concluded.[100] GLO asserts that Dr. Dria's supplemental documents go beyond the scope of the documents that Dr. Dria failed to disclose in her original expert report, and such documents should be struck.[101] Specifically, GLO cites five sequences of pages in Pearl's supplemental report that add to the methods, analysis, reasonings, and evidence considered by Dr. Dria.[102] Additional supplemental data was provided after the deadline; however, the parties stipulated to strike this data.[103]

Rule 26(e) requires that "[a] party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure response."[104] Rule 26(e)(1)(A) allows for supplementation

---

[99] *See Jonibach Mgmt. Trust*, 136 F. Supp. 3d at 809.
[100] ECF No. 196 at 16-17.
[101] ECF No. 173 at 21.
[102] *Id.*; *See* ECF No. 173-9, pages 000001-000031; 000150-156; 000225-000233; 000234-000236, and 000293-000299.
[103] September 26, 2023 – Courtroom Hearing (Opening Argument); *see* ECF No. 173-10.
[104] Fed. R. Civ. P. 26(e); *see also Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 764 (5th Cir. 1989).

when (1) the party learns in some material respect that prior disclosure was incomplete or incorrect and; (2) the additional or corrective information has not otherwise been made available to the other party during the discovery process or in writing.[105] Courts have routinely rejected efforts to "supplement" reports when they were "offered not because of newly learned information or to correct an error in the initial report, as is contemplated by the Rules, but rather were merely an attempt to bolster the original report."[106]

GLO fails to explain how any of cited pages of the supplemental report go beyond the scope of the documents that Dr. Dria failed to disclose in her original expert report.[107] Dr. Dria's supplemental report includes no additional commentary, and predominately consists of charts, numbers, and instructions relating to the use of the "Powertools" program.[108] The report added information that had otherwise not been provided to the GLO after Pearl realized it had been inadvertently left out.[109] This supplementation satisfies Rule 26(e)(1)(A).[110]

Therefore, because the supplemental report is proper, GLO's motion to strike the supplemental report is denied. By joint stipulation of the parties at the September 26, 2023, hearing, all documents contained in the Exhibit G Supplement 1 of "Glo's Motion To Strike Expert Report, Rebuttal Report, And Expert Testimony Or In The Alternative To Strike Portions Of The Expert Report, Rebuttal Report, And Limit Expert Testimony"[111] are stricken by agreement. Dr. Myra Dria may not testify as an expert about any information contained in these documents.

The Court will next consider whether Dr. Dria failed to comply with Rule 26(a)(2)(B)(v).

---

[105] *See* FED. R. CIV. P. 26(e)(1)(A).
[106] *Joseph v. Signal Int'l LLC*, No. 1:13-CV-324, 2015 U.S. Dist. LEXIS 180308, 2015 WL 12766134, at *3 (E.D. Tex. Feb. 12, 2015) (citations omitted); *see also, e.g., Cooper v. Meritor, Inc.*, No. 4:16-CV-52-DMB-JMV, 2019 U.S. Dist. LEXIS 21788, 2019 WL 545187, at *7 (N.D. Miss. Feb. 11, 2019).
[107] ECF No. 173 at 21.
[108] *See generally* ECF No. 173-9.
[109] ECF No. 196 at 17.
[110] *But see Conn v. C.R. Bard, Inc.*, 2021 U.S. Dist. LEXIS 107522, *7 (S.D. Tex. 2021).
[111] ECF No. 173-10.

**(c) Whether Dr. Dria failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B)(v)**

GLO asserts that Dr. Dria failed to comply with Rule 26(a)(2)(B)(v) by failing to disclose that in the prior four years she testified as an expert in a case in state court, and that her expert testimony in a different case was excluded by the court.[112]

Rule 26(a)(2)(B)(v) requires experts to disclose a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition.[113] Failure to do so may bar an expert from testifying.[114] In seeking exclusion under Rule 37, the moving party bears the burden of showing that its adversary failed to timely disclose information required by Rule 26.[115]

GLO cites a 2019 deposition of Dr. Dria in the case of *Nabors Drilling Technologies USA, Inc. v. Pearl Resources Operating Co., LLC and Pearl Resources, LLC*, where Dr. Dria mentioned that expert work relating to "chemical reactions" had been excluded at some point in her career as proof of Pearl's alleged Rule 26 violation.[116] GLO presented no evidence to suggest this case was during the previous four years as required by the Rule, but instead suggests that Dr. Dria's failure to disclose her involvement in the case referenced in the deposition is sufficient to violate Rule 26.[117] This argument is without merit and GLO has failed to carry its burden to demonstrate that Dr. Dria's expert testimony in this case was within the previous four years.

As such, GLO's motion to strike Dr. Dria's expert testimony as procedurally deficient under Rule 26(a)(2)(B)(v) is denied.

---

[112] ECF No. 173 at 22.
[113] Fed. R. Civ. P. 26(a)(2)(B)(v).
[114] *Compare Irving v. Meridian Sec. Ins. Co.*, 2023 U.S. Dist. LEXIS 29175, *10-11 (N.D. Tex. 2023) (finding Rule 26 deficiency in expert disclosure was harmless); *Arnold v. City of San Anto*nio, 2009 U.S. Dist. LEXIS 29694, 2009 WL 780671, at *2 (W.D. Tex. Mar. 24, 2009) (expert twice failed to produce any full case names or cause numbers for opposing party's review and had only identified individuals and retaining attorneys).
[115] *Ronaldo Designer Jewelry, Inc. v. Cox*, 2020 U.S. Dist. LEXIS 39249, *5 (N.D. Miss. 2020).
[116] ECF No. 173-12 at p. 79.
[117] ECF No. 173 at 22.

The Court will next consider whether Dr. Dria's Reports contain irrelevant information that is not the proper subject of an expert report.

### 2. Whether Dr. Dria's Reports contain irrelevant information that is not the proper subject of an expert report

GLO asserts that the Reports contain information that is not relevant to Dr. Dria's expert opinions, and the Reports fail to assist the trier of fact to better understand an issue within her expertise.[118] Specifically, GLO asserts that "the [expert] Report summarizes testimony that does not need an expert to testify as to the issues but is more properly testified to at trial by a fact witness and refers to letters, acts, and other documents by a different oil and gas company not part of or relevant to this litigation."[119] GLO rested on its pleadings regarding relevancy.[120]

While "[m]ost of the safeguards provided for in *Daubert* are not as essential" in the context of a bench trial, a trial judge may still exclude expert testimony that is either unreliable or irrelevant.[121] The proponent must establish relevance, by demonstrating that the expert's reasoning or methodology can be properly applied to the facts in issue, and reliability, by showing the "expert opinion . . . [is] more than unsupported speculation or subjective belief."[122] The proponent must make this showing by preponderance of the evidence.[123]

The GLO cites the following portions of Pearl's Expert Report as containing irrelevant information: (a) page 11 of Pearl's Expert Report: (b) page 20 at para. 4; (c) pages 21-22 at para. 6; (d) pages 29-31; (e) page 34; (f) page 36 at paragraph 14; (g) pages 37-43; (h) pages 44-51; and

---

[118] ECF No. 173 at 5, ⁋ 8.
[119] ECF No. 173 at 5, ⁋ 8.
[120] September 26, 2023 – Courtroom Hearing (Closing Argument).
[121] *Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 Fed. Appx. 850, 852 n.4 (5th Cir. 2018) (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)).
[122] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[123] *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

(i) page 9-10 of the Rebuttal Report.[124] The Court will consider each of the alleged irrelevant parts in turn.

### (a) Page 11 of Pearl's Export Report

Pearl contends that the information contained on page 11 is contained in the background section and therefore forms a backdrop for Dr. Dria's opinions.[125] Pearl further asserts that it provides the background information as to the interference that Pearl experienced and Pearl's efforts to deal with such interference, which in turn informs whether Pearl operated its state leases as a reasonably prudent operator would, and whether Pearl was engaged in drilling operations.[126]

The GLO specifically identified the following language:

> When surface owners call/write the GLO for clarity regarding surface damages, they receive a simple recitation (Bates GLO MF001010) of the lease language (Paragraph 22 of the 1997 RAL lease) form. This is relevant due to repeated vandalism of Pearl's leases and property by certain surface owners (agents of Texas) on the operating equipment and structures placed into service for the drilling of these wells by Pearl. It was these certain surface owner's belief that they were due damages to the surface by construction of roads, frack pits, and battery and drilling pads and the laying of flow lines, and the failure of information provided by the GLO to these owners only served to further their intent on damaging the operations either through their own actions or through the actions of family members and well-placed family friends. Only after Pearl engaged its attorney to respond to the surface owner, Ronnie Brandenburg, complaining about their right to surface damages following the University Lands Schedule, in 2019, that since a damage schedule had not been attached to the lease, that Ronnie or any surface owner was not entitled to any damages. (Exhibit #1, Clinton Butler's Letter 3/13/2018). On April 2, 2018, after learning that no damage payment would be made, Ronnie Brandenburg sold his surface interest (Exhibit #2, 2018-156190 Pecos County).[127]

Evidence is relevant when it has any tendency to make the existence of any material fact more or less probable.[128] Because this portion of the report discussing vandalism provides context

---

[124] ECF No. 173 at 6-7, ⁋ 11.
[125] ECF No. 196 at 8.
[126] ECF No. 196 at 8.
[127] ECF No. 173 at 5-6, ⁋ 9.
[128] *See* Fed. R. Evid. 401 (requiring only a tendency to prove a material fact).

as to interference with Pearl's leases and whether Pearl was engaged in drilling operations, Pearl has carried its burden in demonstrating relevance.

As such, the GLO's Motion to Strike this portion of the report is denied.

### (b) Page 20 at Paragraph 4

The GLO asserts that this portion of the Report is irrelevant, testimonial, and better adduced at trial through a fact witness.[129] Pearl responds by noting that no case exists indicating that when a fact witness may testify as to something, an expert may not opine upon it.[130]

GLO's argument is without merit. The paragraph in question addresses an opinion of Dr. Dria located under the "Abstract of Opinion" portion of her report.[131] Specifically, the paragraph opines on whether Pearl met its offset drilling operation obligations which informs Pearl's operations.

As such, the GLO's Motion to Strike this portion of the report is denied.

### (c) Pages 21-22 at Paragraph 6

The GLO asserts that this portion of the Report is irrelevant, testimonial, and better adduced at trial through a fact witness.[132]

GLO's argument is without merit. Paragraph six addresses an opinion of Dr. Dria located under the "Abstract of Opinion" portion of her report.[133] Specifically, the paragraph is a conclusion regarding Pearl's damages to its reputation, and its financial damages.[134] The overview and financial model are relevant to the issue of damages.[135]

As such, the GLO's Motion to Strike this portion of the report is denied.

---

[129] ECF No. 173 at 6, ¶ 10.
[130] ECF No. 196 at 9.
[131] ECF No. 173-2 at p 11-20.
[132] ECF No. 173 at 6, ¶ 10.
[133] ECF No. 173-2 at p 11-20.
[134] ECF No. 173-2 at 20-22, ¶ 6.
[135] ECF No. 173-2 at 20-22, ¶ 6.

**(d) Pages 29-31**

The GLO asserts that this portion of the Report is irrelevant, testimonial, and better adduced at trial through a fact witness.[136]

GLO's argument is without merit. These pages are part of the "supporting narrative" that Dr. Dria put together to demonstrate how Pearl has conducted drilling operations continuously from the date of the expiration of the primary term of the first least taken, through the date of the filing of the Designation of Terminated Acreage ("*DoTA*") in the Pecos County Courthouse.[137] The specific pages provide context to the activities of Pearl by explaining "a brownfield development," why Pearl turned its attention to horizontal wells over a vertical well, and all the procedures that needed to be followed to engage in drilling operations.[138] This information is relevant as to whether Pearl engaged in continuous drilling operations.[139]

As such, the GLO's Motion to Strike this portion of the report is denied.

**(e) Page 34**

The GLO asserts that this portion of the Report is irrelevant, testimonial, and better adduced at trial through a fact witness.[140]

GLO's argument is without merit. This page is a continuation of the supporting narrative, explaining the significance of water infrastructure and its costs associated with horizontal wells.[141] The information provides context to what a reasonable and prudent operator would do in reference to water storage based on the sheer volume and expenses of water when developing a horizontal

---

[136] ECF No. 173 at 6, ¶ 10.
[137] ECF No. 173-2 at 11, 26-31.
[138] ECF No. 173-2 at 26-31.
[139] *See* ECF No. 1 at 6, ¶ 20.
[140] ECF No. 173 at 6, ¶ 10.
[141] ECF No. 173-2 at 34.

well.[142] This information is relevant as to whether Pearl operated the State Leases as a reasonably prudent operator would.

As such, the GLO's Motion to Strike this portion of the report is denied.

### (f)  Page 36 at Paragraph 14

The GLO asserts that this portion of the Report is irrelevant, testimonial, and better adduced at trial through a fact witness.[143]

GLO's argument is without merit. Paragraph fourteen is a continuation of the supporting narrative discussed *supra*.[144] Specifically, it mentions a patent owned by Dr. Dria for oil field water biocide treatment, and notes that Pearl utilized this treatment for maintain frac water quality.[145] This information is relevant as to whether Pearl operated the State Leases as a reasonably prudent operator would.

As such, the GLO's Motion to Strike this portion of the report is denied.

### (g)  Pages 37-43

The GLO asserts that this portion of the Report is irrelevant, testimonial, and better adduced at trial through a fact witness.[146]

GLO's argument is without merit. An expert report may "provide the foundation for [an] opinion," including factual assertions.[147] This entire section of the report provides the foundation for whether Pearl engaged in continuous drilling operations, noting Pearl's water infrastructure plans, interference with Pearl's activities, and efforts made by Pearl to repair critical

---

[142] ECF No. 173-2 at 33.
[143] ECF No. 173 at 6, ₱ 10.
[144] ECF No. 173-2 at 35-36, ₱14.
[145] ECF No. 173-2 at 35-36, ₱14.
[146] ECF No. 173 at 6, ₱ 10.
[147] *Geiger v. Monroe Cty.*, 2020 U.S. Dist. LEXIS 161252, at *17 (N.D. Miss. 2020); (quoting *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404 (S.D.N.Y. 2013).

infrastructure.[148] This information is relevant as to whether Pearl engaged in continuous drilling operations.

As such, the GLO's Motion to Strike this portion of the report is denied.

**(h) Pages 44-51**

The GLO asserts that this portion of the Report is irrelevant, testimonial, and better adduced at trial through a fact witness.[149]

GLO's argument is without merit. These pages provide additional context and foundation as to Pearl's activities throughout 2019 and whether Pearl conducted itself as a reasonably prudent operator, despite interference to the intended drilling effort.[150] Thus, this information is relevant.

As such, the GLO's Motion to Strike this portion of the report is denied.

**(i) Page 9-10 of the Rebuttal Report**

The GLO asserts that these pages of the Rebuttal Report are irrelevant because they focus on the interactions of Parsley —an oil and gas company that is not a party to this litigation—with the GLO and attempt to draw improper comparisons.[151] Pearl asserts that the interactions regarding Parsley are relevant because it rebuts GLO's expert who did not acknowledge that the GLO could, by letter agreement, delay drilling requirements.[152]

The Court agrees with Pearl and finds the GLO's argument is without merit. The specific pages here focus on how the GLO has applied paragraph seventeen of State Relinquishment Act Land ("*RAL*") leases to Parsley, to demonstrate that this option exists despite not being directly written into a lease.[153] This information provides context into the interpretation of paragraph

---

[148] ECF No. 173-2 at 37-43.
[149] ECF No. 173 at 6, ¶ 10.
[150] ECF No. 173-2 at 44-51.
[151] ECF No. 173 at 6, ¶ 11.
[152] ECF No. 196 at 9, ¶ 22.
[153] ECF No. 173-3 at 9.

seventeen, which is the paragraph supporting the GLO's breach of contract claim against Pearl.[154] Thus, this information is relevant.

As such, the GLO's Motion to Strike this portion of the report is denied.

Accordingly, the GLO's Motion to Strike as to relevance is denied.

The Court will next consider whether Dr. Dria's Reports improperly include contract interpretations, rely upon case law, interpret the law, and draw legal conclusions.

### 3.   Whether Dr. Dria's Reports improperly include contract interpretations, rely upon case law, interpret the law, and draw legal conclusions

The GLO asserts that Dr. Dria's Expert and Rebuttal Reports are riddled with improper testimony as to (a) interpretation of contracts; (b) use of case law to define terms or to support her opinions; and (c) legal conclusions, interpretations of the law, and negative assumptions as to the GLO's operations.[155] The Court will consider each of the alleged irrelevant parts in turn.

#### (a)   Interpretation of Contracts

In its motion, the GLO notes portions of the reports where Dr. Dria interprets the language of key paragraphs of the RAL leases.[156] Pearl responds by noting that the bases for oil and gas operator's decisions are necessarily governed by the applicable state leases.[157]

Generally, government contract experts have been allowed to testify in federal courts regarding the meaning of contract terms when the meaning depends on trade practice.[158] During

---

[154] ECF No. 173 at 6, ¶ 11.
[155] ECF No. 173 at 7-11.
[156] ECF No. 173 at 7.
[157] ECF No. 196 at 10.
[158] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); *see also Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-80 (5th Cir. 1987) (expert testimony admissible to interpret accounting provisions in light of specialized usage and meaning in the oil and gas industry).

the Hearing, GLO conceded that Dr. Dria is extremely qualified and capable of interpreting the leases as an expert in this field.[159]

As such, the GLO's Motion to Strike as to Dr. Dria's lease interpretations in her Reports is denied.

### (b) Use of Case Law to Define Terms or to Support Her Opinions

The GLO asserts the following parts of the Reports cite case law, rely upon case law, or interpret case law:

| Location in Reports[160] | Citation Used in Report |
|---|---|
| Expert Report: EX A at PDF page 8, Footnote 1<br><br>And<br><br>Rebuttal Report: EX B at PDF page 4, Footnote 1 | "In Texas, a reasonably prudent operator is an objective standard where the factfinder will decide whether the operator's acts or omissions are like that of a reasonably prudent operator under the same or similar circumstances. **The reasonably prudent operator, having an expectation of profit, must act in good faith, with competence and with due regard to the interests of the lessor and its own interests.** (Exxon Corp. v. Miesch, 180 S.W.3d 299, 323 (Tex. App. Corpus Christi-Edinburg 2005) (reversed on other grounds) (citing Hurd Enters. v. Bruni, 828 S.W.2d 101,109 n.10 (Tex. App. – San Antonio 1992, writ denied).)" |
| Expert Report: EX A at PDF page 9, Footnote 2<br><br>And<br><br>Rebuttal Report: EX B PDF page 9, Footnote 5 | "Texas law 'define[s] good and workmanlike as that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work. (Shakeri v. ADT Sec. Services, Inc., 816 F.3d 283, 296 n.2 (5th Cir. 2016) (quoting Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987))" |
| Expert Report: EX A at PDF page 287, Appendix C-2 | "Bell v. Chesapeake Energy Corp, 2019 Tex. App. LEXIS 1978, 2019WL 1139584 (Tex.Civ.App.—San Antonio, 2019, no pet)" |

---

[159] September 26, 2023 – Courtroom Hearing (Closing Argument).
[160] ECF No. 173 at 8.

Pearl reasons that the cases merely recite standards such as the reasonably prudent operator standard, which oil and gas operators would be familiar with the standard and how it works because it governs operators' interactions with lessors.[161]

Nevertheless, Federal Rule of Evidence 704 does not allow an expert to render conclusions of law.[162] Attempts to offer pure legal opinion on what current Texas law is, and how it would be applied is not permitted.[163] Each footnote in the table *supra* demonstrates Dr. Dria utilizing caselaw to interpret or explain her testimony and must be stricken.

Appendix C-2 utilizes a case to support an interpretation of a provision of the Texas Administrative Code.[164] This legal opinion is not permitted.[165] Thus, this appendix must be struck.

Accordingly, footnotes 1, 2, and 5 of the expert report, footnotes 1 and 5 of the rebuttal report, and appendix C-2 are struck.

### (c) Legal Conclusions, Interpretations of the Law, and Negative Assumptions as to the GLO's operations

The GLO asserts that Dr. Dria interprets the law, makes negative assumptions as to the GLO, and draws legal conclusions on page 7 of the expert report, pages 21-22 of the expert report, and page 12 of the rebuttal report.[166] Pearl asserts that oil and gas operators should operate knowing the standards and how they apply in their industry, such as the reasonably prudent operator standard and that industry experts are permitted to provide expert testimony as to whether a

---

[161] ECF No. 196 at 12.
[162] *Snap-Drape v. Comm'r of Internal Revenue*, 98 F.3d 194, 197-98 (5th Cir. 1996).
[163] *Deep Ellum Brewing Co. v. Tex. Alcoholic Bev. Comm'n*, 2016 U.S. Dist. LEXIS 157526, *9 (W.D. Tex. 2016); (citing *LULAC v. Edwards Aquifer Auth.*, 2014 U.S. Dist. LEXIS 185049, 2014 WL 10762935 at *2 (W.D. Tex. Sept. 30, 2014) (excluding expert report containing legal analysis of constitutional provisions, case law, statutes and rules)
[164] ECF No. 173-2 at 287.
[165] *Goodman v. Harris Cnty*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusions of law").
[166] ECF No. 173 at 9-10.

particular industry participant satisfied the industry standard.[167] The Court will address each in turn.

### i.      Page 7 of the Expert Report

This portion of the report reads as follows:

> One of the key items this expert wish to clarify is how broadly the State of Texas defines 'Drilling Operation' in Title 31 of the Texas Administrative Code ("TAC") Rule 9. versus the narrow definition applied by the GLO. As will be discussed in more detail herein, 'Drilling Operations' in TAC 9.31 includes ALL steps required from the time a well is staked, roads built, reserve pits in place, etc. all the way to having a battery with tanks and vessels to separate each of the products to marketable condition. Also the GLO apparently failed to consider technical and regulatory changes in requirements needed in Drilling Operations and Offset Well requirements (also in TAC 9.31), to accommodate the drilling by Pearl of long (>3,000 ft) horizontal unconventional (hydraulically fractured) shale wells requiring huge amounts of water per well in order to frack each well ('well completion') for successful production of hydrocarbons from these wells and how the linear horizontal well geometry impacts the Offset Well requirement. This Offset Well requirement defined in the terms used by the GLO in its lease is inconsistent with the timing of RRC-compliant public reporting of producing completions provided by the Field Rules for these wells drilled in the Phantom (Wolfcamp) Field. That the GLO has raised this as an issue demonstrates that the GLO is unaware that this conflict in compliancy (RRC vs. GLO) exists by application of the GLO's definition.[168]

GLO asserts that this paragraph improperly analyzes the interplay of the rules between the GLO and the Texas Railroad Commission, draws a legal conclusion as to what is considered a "drilling operation" under the law, and makes aspersions as to the GLO's understanding of its industry.[169] Pearl cites, *inter alia*, *Masters v. Safeco Ins. Co. of Am.*, in support of the proposition that an expert may testify as to whether, in the expert's opinion, a party's conduct conformed with specific industry standards, including standards identified by statute, and the expert may compare those standards to specific factual instances of defendant's actions.[170]

---

[167] ECF No. 196 at 12-13.
[168] ECF No. 173-2 at 7.
[169] ECF No. 173 at 9.
[170] 2021 U.S. Dist. LEXIS 181822 at *7-8 (D. Colo. 2021).

The Fifth Circuit permits experts to opine on contract provisions in light of specialized usage and meaning in its industry.[171] However, the Fifth Circuit has held that expert witnesses may not testify to legal conclusions.[172] This portion of the report specifies what Dr. Dria believes is the industry interpretation of drilling operations, which is found directly in paragraph 16(A) of the lease.[173] To the extent that Dr. Dria is explaining what the term means to operators in the oil and gas industry, this portion of the report is permissible. The Court rejects Dr. Dria's contention on how the Texas Administrative Code is read as a matter of law, because such a contention is a legal conclusion. As such, GLO's motion to strike this portion of the report is granted in part. Dr. Dria may not testify as to how the Texas Administrative Code is interpreted.

### ii.    Pages 21-22 of the Expert Report

This portion of the report reads as follows:

> Severe damage to Pearl by the State has occurred due to the State's published threats and their actions of lease termination rendering uncertainty into proper title prior to huge investments planned for ongoing Drilling Operation's activities. Their actions were both capricious and arbitrary given their roles in oil and gas activity oversight and the lack of accountability in their actions. Reputations matter and the GLO's email commentary (GLO 2nd Prod 000012) to members of the community hinted at blemishing Pearl's reputation. The monetary damages are significant and fall within the following categories and will be detailed in following sections: . . ..[174]

GLO asserts that this paragraph is pure advocacy, which is improper for expert testimony.[175] Pearl disagrees with the assertion that this is pure advocacy and asserts that

---

[171] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-80 (5th Cir. 1987) (expert testimony admissible to interpret accounting provisions in light of specialized usage and meaning in the oil and gas industry).

[172] *Estate of Sowell v. United States*, 198 F.3d 169, 172 (5th Cir. 1999).

[173] *See e.g.,* ECF No. 1-2 at 5.

[174] ECF No. 173-2 at 21-22.

[175] ECF No. 173 at 9-10.

it is opinion as to what transpired and whether it affected Pearl's ongoing drilling operation activities.[176]

The Court disagrees that this portion of the report is advocacy. Legal conclusions or statements of advocacy do not assist the factfinder.[177] This portion of Dr. Dria's report asserts that Pearl suffered reputational harm which interfered with Pearl's ongoing drilling activities in the context of the oil and gas industry.[178] Commentary on what can cause a party harm during drill operations in the oil and gas industry is not in itself a legal conclusion. As such, GLO's motion to strike this portion of the report is denied.

### iii.     Page 12 of the Rebuttal Report

GLO asserts that Dr. Dria's rebuttal report contains an improper conclusion of law.[179]

This portion of the rebuttal report reads as follows: "Pearl diligently delivered Drilling Operations, including all activities required to deliver the three horizontal wells to production (requiring a facility) as a reasonably prudent operator would do."[180]

As discussed *supra*, a reasonably prudent operator is a term found in paragraph 16 of the lease agreement.[181] Dr. Dria explains that completing all the activities as required to deliver horizontal wells to production, is the industry understanding of the term in the context of this lease. This is permitted as discussed *supra*.[182] As such, GLO's motion to strike this portion of the report is denied.

---

[176] ECF No. 196 at 12-13.
[177] *Am. Home Assur. Co. v. Cat Tech, L.L.C.*, 717 F. Supp. 2d 672, 682 (S.D. Tex. 2010), rev'd, 660 F.3d 216 (5th Cir. 2011) (citing *Snap–Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 197–98 (5th Cir.1996)).
[178] ECF No. 173-2 at 21-22.
[179] ECF No. 173 at 10.
[180] ECF No. 173 at 10.
[181] *See e.g.*, ECF No. 1-2 at 5.
[182] *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-80 (5th Cir. 1987) (expert testimony admissible to interpret accounting provisions in light of specialized usage and meaning in the oil and gas industry).

Accordingly, in sum, footnotes 1, 2, and 5 of the expert report, footnotes 1 and 5 of the rebuttal report, and appendix C-2 are struck. GLO's motion to strike the entire report including permissible contract interpretation as discussed *supra* is denied.

### 4. Whether the damage models contained in the Dr. Dria's Reports are speculative and not reliable

GLO asserts that the overall damage models presented in Dr. Dria's expert report are unreliable because there has been no evidence presented that the models have been subject to testing or peer review, that no rate of error or controlling standards were presented, or whether the model has obtained general acceptance in the field.[183]

"Under Federal Rule of Evidence 702(c), an expert's testimony must be 'the product of reliable principles and methods.' When assessing reliability, Courts consider a list of nonexclusive factors including (1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance. While these factors are not determinative, they can 'help to evaluate the reliability even of experienced-based testimony.'"[184]

To establish reliability under *Daubert*, an expert must provide objective, independent support for his methodology.[185] If a challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the [finder of fact]."[186] "The expert's assurances that he has utilized generally accepted [principles] is insufficient."[187] The relevant consideration under *Daubert* is the

---

[183] ECF No. 173 at 12.
[184] *Texokan Operating, Inc. v. Hess Corp.*, 89 F. Supp. 3d 903, 910 (S.D. Tex. 2015).
[185] *Caramba v. Nationwide Mut. Fire Ins., Co.*, No. H-19-1973, 2020 U.S. Dist. LEXIS 242250, at *19-20 (S.D. Tex. Dec. 24, 2020) (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).
[186] *Id.* (quoting *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005)).
[187] *Id.* (quoting *Brown*, 705 F.3d at 536).

reliability of the methodology used in analyzing the information provided to or gathered by the expert.[188]

The GLO conceded that as to an expert in the field of oil and gas, Dr. Dria is highly qualified.[189] GLO asserts however, that the overall damage models presented in Dr. Dria's expert report are unreliable for each of the factors listed *supra*.[190]

Nevertheless, Dr. Dria applied the recommendations of the Society of Petroleum Evaluation Engineers ("*SPEE*") in forming her opinion as to the damage models.[191] The SPEE recommendations are subject to rigorous peer review and testing, the recommendations are published, the recommendations are reliable with a low error rate, the recommendations are generally accepted in the industry, and Dr. Dria used a software called "Powertools" that is used as a standard in the industry.[192] Furthermore, the expert report disclosed that Dr. Dria used "Powertools" in accordance with the "SPEE Recommended Evaluation Practice Program."[193] The Court finds that Dr. Dria's methodology is sufficiently reliable under these facts.

The GLO further asserts numerous objections as to whether Dr. Dria's calculations are accurate or based on assumptions; however, where the reliability of the evidence relied on is sufficiently related to the case, disputes over the expert's credibility or over the accuracy of the underlying facts are for the factfinder.[194] To the extent Dr. Dria's credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility.[195]

---

[188] *Id.* (citing *Collins v. Safeco Ins. Co.*, No. 3:18-CV-01788-X, 2020 U.S. Dist. LEXIS 2612, at *2 (N.D. Tex. Jan. 8, 2020)).

[189] September 26, 2023 – Courtroom Hearing (Closing Argument).

[190] ECF No. 173 at 12.

[191] ECF No. 196 at 13.

[192] ECF No. 196 at 13-15; ECF No. 196-4 – 196-14.

[193] ECF No. 196 at 14; *see* ECF No. 173-2 at 253.

[194] *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015); citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2015).

[195] *Id.*; *see also, Guild v. GMC*, 53 F. Supp. 2d 363 (W.D.N.Y. 1999) ("[T]rial judges acting as gatekeepers under *Daubert* must not assume 'the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth

As such, GLO's motion to strike the damages model of the report is denied.

The Court will next consider Pearl's Motion to strike.

## C. Pearl's Motion

In its Motion, Pearl asserts that the GLO's expert James Gregory Cloud, P.E. ("*Cloud*"): (1) is not qualified to render oil and gas operations opinions[196]; (2) utilizes factual assumptions that are disguised as opinions[197]; (3) utilizes a term not commonly used in the industry;[198] (4) improperly offers contract interpretations and legal opinions[199]; and (5) improperly calculates compensatory royalties[200]. The Court will consider each in turn.

### 1. Whether Cloud is qualified to render oil and gas operations opinions

Pearl asserts that Cloud is unqualified to testify as an expert as to any subject in the instant case.[201] Specifically Pearl asserts that Cloud has no expertise, training, or experience in oil and gas operations or as an operator, no experience in interpreting lease requirements as an operator, and little to no experience analyzing oil and gas leases.[202] For these reasons, Pearl concludes that Cloud cannot opine upon whether Pearl operated continuous drilling operations.[203]

Rule 702 requires a witness to be qualified as an expert by knowledge, skill, experience, training, or education.[204] "The standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the

---

of an expert witness's soul' and thereby usurp 'the ageless role of the jury' in evaluating witness credibility and weight of the evidence.") (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1045 (2d Cir. 1995)).

[196] ECF No. 174 at 9-10.

[197] ECF No. 174 at 10-11.

[198] ECF No. 174 at 11.

[199] ECF No. 174 at 11-13.

[200] ECF No. 174 at 13-14.

[201] ECF No. 174 at 9.

[202] ECF No. 174 at 9.

[203] ECF No. 174 at 9.

[204] *USA Promlite Tech. Inc. v. City of Hildalgo* (*In re USA Promlite Tech. Inc.*), 2022 Bankr. LEXIS 2811, at *13 (Bankr. S.D. Tex. 2022).

witness has qualifications in the general field related to the subject matter in question."[205] "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[206] The inquiry is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues."[207] The court has wide discretion in determining whether an expert is qualified.[208]

Cloud testified that he had over forty years of experience in the oil and gas field, but conceded none of that experience was as an oil and gas operator.[209] Nevertheless Cloud's substantial experience in the oil and gas field, including his experience as a technical hearings examiner at the Texas Railroad Commission and as a consulting petroleum engineer, is sufficiently related to the subject matter of this case.[210] Cloud's lack of experience as an operator bears on the weight assigned to his testimony regarding oil and gas operations, but does not disqualify him from opining on the particular issues of this case.[211]

As such, Pearl's Motion to Exclude as to Cloud's qualifications is denied.

The Court will next consider whether Cloud's factual assumptions are disguised as opinions.

### 2.   Whether Cloud's factual assumptions are disguised as opinions

---

[205] *Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV.A. H-07-3973, 2008 U.S. Dist. LEXIS 101781, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008).

[206] *Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009).

[207] *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999).

[208] *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997).

[209] September 26, 2023 – Courtroom Hearing (James Cloud, testifying).

[210] *See Guzman v. Mem'l Hermann Hosp. Sys.*, No. CIV.A. H-07-3973, 2008 U.S. Dist. LEXIS 101781, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008).

[211] *See Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009).

Pearl asserts that specific opinions in the Cloud Expert Report are disputed or undisputed facts that Cloud assumes or concludes from the materials he reviewed and that they are merely attempts to instruct the jury what verdict to return as to the disputed or assumed facts.[212]

Under Federal Rule of Evidence 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. . .."[213] Furthermore, where the reliability of the evidence relied on is sufficiently related to the case, disputes over the expert's credibility or over the accuracy of the underlying facts are for the factfinder.[214] To the extent Cloud's credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility.[215]

Pearl objects and lists six statements on the Cloud Expert Report as factual assumptions which are disguised as opinions but fails to cite any authority in support of striking these statements or prohibiting Cloud from opining on them.[216] The statements include:

a. Pearl did not diligently engage in continuous drilling or reworking operations on Sections 20 and 22 in order to retain acreage under Paragraph 16(A)(1) of the Lease;
b. Due to Pearl's alleged failure to engage in continuous drilling or reworking operations in a diligent manner, 635.22 acres of the 955.22 acres originally under lease terminated under Paragraph 16(A)(1) of the Lease;
c. Under Paragraph 16(A)(3), the Garnet State #3 well "arguably entitles" Pearl to retain 320 acres on Section 20;
d. That Pearl Resources Operating Co, LLC was required by Paragraph 17 of the Lease to drill an offset well or seek a compensatory royalty agreement, but failed to do either;
e. All 955.22 acres of the Lease were subject to forfeiture under the provisions of Paragraph 17 due to Pearl's alleged failure to drill offset wells or pay a compensatory royalty as required by the Lease; and
f. As of December 31, 2021, the value of the compensatory royalty due to the GLO

---

[212] ECF No. 174 at 11.
[213] Fed. R. Evid. 703.
[214] *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015); citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2015).
[215] *Id.*
[216] ECF No. 174 at 10-11.

in lieu of drilling an offset well is $2,578,633.[217]

The statements are found under the Summary of Opinions of Cloud's Expert Report and consist of his conclusions.[218] Pearl disputes the factual assumptions of Cloud's opinions; however, such flaws go to the weight of the evidence, not it its admissibility.[219]

As such, Pearl's Motion to Exclude as to Cloud's Expert Report Summary and the conclusions drawn therein is denied.

The Court will next consider whether Cloud improperly utilizes a term not commonly used in the oil and gas industry.

### 3.  Whether Cloud improperly utilizes a term not commonly used in the industry

Pearl next objects to any opinion expressed by Cloud regarding a so-called "snapshot" or "snapshot date" because the term is not commonly used in the industry.[220]

Pearl cites no authority for exclusion of phrases used by an opposing party's expert. Furthermore, Cloud testified that the expression he used was merely in reference to the moment in time relevant to what the status of Pearl's operations were at the date set out in paragraph 16 of the retained acreage provision of the state leases.[221] Pearl provided no basis to support exclusion of testimony regarding a "snapshot date," or a contrary interpretation of the phrase.[222]

As such Pearl's Motion to Exclude as to Cloud's opinions regarding a "snapshot date" is denied.

---

[217] ECF No. 174 at 10-11.
[218] ECF No. 206-4 at 2.
[219] *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) ("To the extent [the expert's] credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility."); *Matador Drilling Co. v. Post*, 662 F.2d 1190, 1199 (5th Cir. 1981) (finding appellant's "general complaint that the reports are incomplete and inaccurate are matters going to the weight of this evidence and not its admissibility.").
[220] ECF No. 174 at 11.
[221] September 26, 2023 – Courtroom Hearing (James Cloud, testifying).
[222]

The Court will next consider whether Cloud improperly offers contract interpretations and legal opinions.

### 4.   Whether Cloud improperly offers contract interpretations and legal opinions

Pearl asserts that most of Cloud's opinions are nothing more than contract interpretations or legal conclusions.[223] Specifically, Pearl asserts that the six conclusions mentioned *supra* drawn by Cloud in his Summary of Opinions of Cloud's Expert Report, are impermissible contract interpretations.[224]

The Fifth Circuit permits experts to opine on contract provisions in light of specialized usage and meaning in its industry.[225] However, the Fifth Circuit has held that expert witnesses may not testify to legal conclusions.[226] This portion of the report summarizes Cloud's opinion of Pearl's performance under its lease based on the facts and data reviewed.[227] However each statement, except for the final conclusion estimating the compensatory royalty, concludes a lease violation as it applies to Pearl's conduct.[228] These statements describe Pearl's responsibilities under its lease, and because such contentions are legal conclusions they must be struck.[229]  Furthermore, the Court will reject any testimony from Cloud that merely concludes that Pearl violated specific obligations under its lease.

---

[223] ECF No. 174 at 11.
[224] ECF No. 174 at 12.
[225] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-80 (5th Cir. 1987) (expert testimony admissible to interpret accounting provisions in light of specialized usage and meaning in the oil and gas industry).
[226] *Estate of Sowell v. United States*, 198 F.3d 169, 172 (5th Cir. 1999).
[227] ECF No. 206-4 at 2.
[228] *Id.*
[229] *See Snap–Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 197–98 (5th Cir.1996).

As such, Pearl's Motion to Exclude is sustained in part. The following conclusions drawn by James Cloud in his Summary of Opinions of Cloud's Expert Report are excluded from evidence:

- Pearl did not diligently engage in continuous drilling or reworking operations on Sections 20 and 22 in order to retain acreage under Paragraph 16(A)(1) of the Lease;
- Due to Pearl's failure to engage in continuous drilling or reworking operations in a diligent manner, 635.22 acres of the 955.22 acres originally under lease terminated under Paragraph 16(A)(1) of the Lease;
- Under Paragraph 16(A)(3), the Garnet State #3 well arguably entitles Pearl to retain 320 acres on Section 20;
- That Pearl Resources Operating Co, LLC was required by Paragraph 17 of the Lease to drill an offset well or seek a compensatory royalty agreement, but failed to do either;
- All 955.22 acres of the Lease were subject to forfeiture under the provisions of Paragraph 17 due to Pearl's failure to drill offset wells or pay a compensatory royalty as required by the Lease.[230]

Cloud may not produce testimony that merely concludes that Pearl violated specific obligations under its lease.

The Court will next consider whether Cloud improperly calculated compensatory royalties.

### 5.   Whether Cloud improperly calculates compensatory royalties

Pearl asserts that Cloud's method of calculating compensatory royalties is based on insufficient and inaccurate data and is not the product of reliable principles and methods.[231]

"Under Federal Rule of Evidence 702(c), an expert's testimony must be 'the product of reliable principles and methods.' When assessing reliability, Courts consider a list of nonexclusive factors including (1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance.

---

[230] ECF No. 126 at 2.
[231] ECF No. 174 at 13.

While these factors are not determinative, they can 'help to evaluate the reliability even of experienced-based testimony.'"[232] Experts are permitted wide latitude in choosing what data they rely on in forming their opinions.[233] Miscalculations and inaccuracies go to the weight of the evidence and not its admissibility.[234]

The GLO asserts that Cloud's methodology was sound, as it was calculated under 31 Texas Administrative Code §9.37(c) in accordance with paragraph 15 of the State Lease.[235] Pearl did not dispute the equation utilized by Cloud, but instead argued the underlying data as being incorrect.[236]

Nevertheless, even assuming *arguendo* that Cloud's report has errors based on the data used rather than its methodology, such inaccuracies go to the weight of the evidence and not its admissibility.[237]

As such Pearl's Motion to Exclude as to Cloud's opinions on the basis of methodology is denied.

Accordingly, in sum, Pearl's *Daubert* challenges are granted in part and denied in part.

### IV. CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

---

[232] *Texokan Operating, Inc. v. Hess Corp.*, 89 F. Supp. 3d 903, 910 (S.D. Tex. 2015).
[233] *United States v. Seale*, 600 F.3d 473, 491 (5th Cir. 2010).
[234] *United States ex rel. America v. CIT Bank, N.A.*, 2022 U.S. Dist. LEXIS 75853, *21 (E.D. Tex. 2022); citing *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-CV-175, 2015 U.S. Dist. LEXIS 108754, 2015WL 4915701, at *7 (S.D. Miss. Aug. 18, 2015).
[235] ECF No. 195 at 12-13.
[236] September 26, 2023 – Courtroom Hearing (James Cloud testifying).
[237] *See United States ex rel. America v. CIT Bank, N.A.*, 2022 U.S. Dist. LEXIS 75853, *21 (E.D. Tex. 2022); citing *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-CV-175, 2015 U.S. Dist. LEXIS 108754, 2015WL 4915701, at *7 (S.D. Miss. Aug. 18, 2015).

SIGNED December 13, 2023

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge