IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-31585 |
| PEARL RESOURCES LLC, PEARL | § | |
| RESOURCES OPERATING CO. LLC, | § | CHAPTER 11 |
| | § | |
| Debtors. | § | |
| | § | |
| DAWN BUCKINGHAM, MD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-3169 |
| | § | |
| PEARL RESOURCES LLC and PEARL | § | |
| RESOURCES OPERATING CO. LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

After a lengthy trial and post-trial motion practice, the instant litigation concludes with a commanding message. Affirmative defenses must be pled, time entries must be specific, and expenses substantiated. Failure to adhere to these standards can negatively impact a party's position.

Pearl Resources LLC and Pearl Resources Operating Co. seek reconsideration of this Court's February 28, 2025 Memorandum Opinion as to whether sovereign immunity bars recovery for Pearl, and as to an award for attorneys' fees to the Texas General Land Office. Simultaneously, the Texas General Land Office seeks its attorneys' fees awarded in this Court's February 28, 2025 Memorandum Opinion. Without the need of a hearing, the Court issues the instant Memorandum Opinion and Judgment.

## I. FINDINGS OF FACT

### A. Background

1. On March 3, 2020, Pearl Resources LLC and Pearl Resources Operating Co. (collectively "*Pearl*") filed for relief under Chapter 11 of the United States Bankruptcy Code (the "*Petition Date*").

2. On May 28, 2020, George P. Bush, Commissioner of the Texas General Land Office (the "*GLO*" or the "*State*"), by and through the Office of the Texas Attorney General, filed the instant Complaint for Declaratory Judgment[1] (the "*Complaint*") against Pearl.

3. On February 28, 2025, this Court issued its "Memorandum Opinion"[2] (the "*Previous Memorandum Opinion*") and "Judgment" (the "*Previous Judgment*").

4. For the purposes of this Memorandum Opinion and, to the extent not inconsistent herewith, this Court adopts and incorporates by reference each of the Background Facts in this Court's Previous Memorandum Opinion.[3]

5. On March 14, 2025, Pearl filed its "Pearl Resources, LLC and Pearl Resources Operating Co.'s Motion to Alter or Amend Judgment"[4] (the "*Motion for Reconsideration*").

6. On April 4, 2025, the GLO filed its "The Texas General Land Office's Objection and Response to Pearl Resources, LLC and Pearl Resources Operating Co.'s Motion to Alter or Amend Judgment"[5] (the "*Objection to Reconsideration*").

7. On April 11, 2025, Pearl filed its "Reply in Support of Pearl Resources, LLC and Pearl Resources Operating Co.'s Motion to Alter or Amend Judgment"[6] (the "*Reply to Reconsideration*").

8. April 14, 2025, the GLO filed its "The Texas General Land Office's Application for Attorney Fees Pursuant to the Court's Memorandum Opinion and Judgment"[7] ("*Application for Fees*").

9. On April 28, 2025, Pearl filed its "Pearl Resources' Objection and Response to The Texas General Land Office's Application for Attorney's Fees"[8] (the "*Objection to Fees*").

---

[1] ECF No. 1.
[2] ECF No. 375.
[3] ECF No. 375.
[4] ECF No. 383.
[5] ECF No. 388.
[6] ECF No. 390.
[7] ECF No. 391.
[8] ECF No. 392.

10. On May 9, 2025, the GLO filed its "The Texas General Land Office's Reply to Pearl Resources LLC and Pearl Resources Operating Co., LLC's Objection to the Texas General Land Office's Application for Attorney Fees Pursuant to the Court's Memorandum Opinion and Judgment"[9] (the "*Reply to Fees*").

## II. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[10] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[11] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of this estate.[12] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[13]

This Court may only hear a case in which venue is proper.[14] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtors have their principal place of business in Houston Texas and therefore, venue of this proceeding is proper.[15]

---

[9] ECF No. 395.
[10] *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[11] 28 U.S.C. § 157(a); *see also In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[12] *See* 11 U.S.C. § 157(b)(2)(A) & (O).
[13] *See Southmark Corp. v. Coopers & Lybrand* (*In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987)).
[14] 28 U.S.C. § 1408.
[15] Bankr. ECF No. 1; "Bankr. ECF" refers docket entries made in the Debtor's bankruptcy case, No. 20-31585. Entries made in GLO's Case number 20-3169 shall take the format of ECF No. __.

## B. Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[16] The instant proceeding before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).[17] Accordingly, this Court concludes that the narrow limitation imposed by Stern does not prohibit this Court from entering a final order here.[18] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[19] Both of these parties have consented to this Court's constitutional authority to enter a final order or judgment.[20] These circumstances unquestionably constitute express consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III. ANALYSIS

### A. Pearl's Motion for Reconsideration

In its Motion to Reconsider, Pearl seeks reconsideration of this Court's Memorandum Opinion[21] and Judgment,[22] pursuant to Federal Rule of Civil Procedure ("*Rule*") 59(e), made

---

[16] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[17] ECF No. 271 at 4.
[18] *See, e.g.*, *Badami v. Sears* (*In re AFY, Inc.*), 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West* (*In re Davis*), No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend Stern's limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).
[19] *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").
[20] ECF No. 21; ECF No. 22.
[21] ECF No. 375.
[22] ECF No. 376.

applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 9023. Specifically, Pearl seeks for the Court to reconsider its determinations as to (1) sovereign immunity and (2) awarding of attorney's fees to the GLO pursuant to Texas Civil Practice and Remedies Code § 38.001.[23] The Court will address each in turn.

### 1. Federal Rule of Civil Procedure 59(e)

"Relief under Rule 59(e) is an extraordinary remedy that should be used sparingly."[24] In deciding such motions, the Court identifies two judicial imperatives: first, "the need to bring litigation to an end" and second, "the need to render just decisions on the basis of all the facts."[25] A party must establish at least one of four grounds indicating the need to amend the underlying judgment pursuant to Rule 59(e). That is, that an amendment is either: (1) necessary to prevent manifest error of law; (2) necessary to prevent manifest error of fact; (3) necessary to present newly discovered or previously unavailable evidence; or (4) necessary to prevent manifest injustice.[26] These grounds are narrowly construed to ensure that a party is not utilizing the extreme remedy under Rule 59(e) to relitigate the same matters that have already been determined by the court.[27] Accordingly, a court should deny a motion to amend if it is used to present arguments that "could, and should, have been made before the judgment issued."[28]

### 2. Sovereign Immunity as to liability

Pearl asserts that a manifest error of law exists as to this Court's consideration of sovereign immunity as to the GLO.[29] As this Court noted in its Memorandum Opinion, the GLO waived

---

[23] ECF No. 383 at 3.
[24] *Indep. Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 396 (5th Cir. 2021).
[25] *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).
[26] *Kitziger v. Gulfstream Servs.*, No. 20-386, 2021 U.S. Dist. LEXIS 187082, at *1 (E.D. La. Sep. 29, 2021).
[27] *Id.*
[28] *Advocare Int'l LP v. Horizon Labs, Inc.*, 524 F.3d 679, 691 (5th Cir. 2008).
[29] ECF No. 383 at 4.

immunity from suit to the extent required for the lawsuit's complete determination,[30] which includes the adjudication of Pearl's applicable counterclaims.[31] Instead, Pearl disputes whether the GLO waived immunity from liability.[32]

The Fifth Circuit, in *Carty v. State Office of Risk Mgmt.*, teaches that the question of waiver of sovereign immunity from liability is governed by state law.[33] The Fifth Circuit has also explained that "[u]nder established Texas law, sovereign immunity from liability is treated as an affirmative defense to liability: 'it must be pleaded or else it is waived.'"[34] This is because immunity from liability and immunity from suit are two distinct principles, and because immunity from liability does not affect a court's jurisdiction to hear a case, it is treated like other affirmative defenses to liability and must be expressly pled or else it is waived.[35]

At trial, during closing arguments the GLO raised for the first time that "it was obligated to raise the issue of sovereign immunity" which precludes any recovery of damages by Pearl, asserting that the GLO has consistently maintained this position throughout the proceedings.[36] Specifically, the GLO cited a reply filed during trial to a motion to enforce a fee award, which

---

[30] ECF No. 375 at 28.
[31] *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 373 (Tex. 2006) ("if the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted. Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity. In this situation, we believe it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it.").
[32] ECF No. 383 at 4.
[33] *Carty v. State Office of Risk Mgmt.*, 733 F.3d 550, 554-55 (5th Cir. 2013) (citing *Meyer v. Texas*, 410 F.3d 236, 253 (5th Cir. 2005).
[34] *Carty*, 733 F.3d at 555 (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam) (citing *Davis v. City of San Antonio*, 752 S.W.2d 518, 519-20 (Tex. 1988)); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003) ("Unlike immunity from suit, immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction.").
[35] *Texas DOT v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (citing *Davis v. City of San Antonio*, 739 S.W.2d 394, 397 (Tex. App. -- San Antonio 1987), *rev'd*, 752 S.W.2d 518 (Tex. 1988)).
[36] Courtroom Hearing – September 17, 2024 (Closing Argument).

states "the GLO continues to assert that it is legally entitled to sovereign immunity as to liability for damages over and above any such offset amounts."[37] Pearl asserted in closing that the GLO had never raised this issue prior to trial, and to the extend the GLO was now asserting sovereign immunity as to liability, the GLO has waived it through its conduct in this proceeding "through its own actions and inactions."[38] This Court initially found that the GLO raised immunity from liability at the summary judgment level, because the GLO "moved for dismissal of certain affirmative defenses raised by Pearl because they could not be raised against a sovereign."[39] However, the notion of being a sovereign is independent of formally asserting sovereign immunity as an affirmative defense.[40] The analysis in the instant case must instead be whether the GLO expressly pled sovereign immunity as an affirmative defense.

Upon a comprehensive review of each of the GLO's pleadings in this case, the Court finds that not once has the GLO ever expressly pled sovereign immunity as an affirmative defense.[41] Nor has the GLO pointed to any such pleading. As such, pursuant to the Fifth Circuit's holding in *Carty* as discussed *supra*, the Court grants Pearl's Motion to Reconsider in part and finds that the GLO waived sovereign immunity as to liability. Accordingly, Pearl's recovery of $40,577,031 that was previously barred by sovereign immunity, is now recoverable from the Texas General Land Office as modified herein.[42]

3. **Attorney's Fees**

---

[37] ECF No. 305 at 4.
[38] Courtroom Hearing – September 17, 2024 (Closing Argument).
[39] ECF No. 375 at 29.
[40] *See Meyers v. Texas*, 410 F.3d 236 at 254-55 (5th Cir. 2005) ("We conclude, however, that it is more appropriate to say that the Court's cases accommodate the view that the Constitution guarantees a state's prerogative, by its own law, to treat its immunity from liability as separate from its immunity from suit for purposes of waiver or relinquishment.")
[41] ECF No. 1; ECF No. 75; ECF No. 127.
[42] ECF No. 375 at 29; ECF No. 376 at 4.

Pearl next asserts that a manifest error of law exists, as Pearl contends the GLO is not entitled to attorneys' fees under Texas Civil Practice and Remedies Code § 38.001(b).[43] Specifically, Pearl notes that the version of the Texas Civil Practice and Remedies Code § 38.001(b) in effect at the instant lawsuit's inception did not permit recovery of attorney's fees against Limited Liability Companies, such as Pearl.[44] Nevertheless, under Texas law attorneys' fees are recoverable when authorized by contract,[45] and as this Court expressly noted in its Memorandum Opinion, when analyzing approximately 35 oil and gas leases issued for Sections 20 and 22 located in the H&GN RY Survey, Block 8 of Pecos County, Texas and covering 955.22 acres (the "*State Leases*"), the State Leases served as the basis for recovery of attorneys' fees. As stated therein: "attorneys' fees are permitted if the claim is for 'an oral or written contract.' Because the GLO has met its burden…[that] the State Leases constitute written contracts that Pearl has breached, the GLO is entitled to collect such fees.'"[46] The basis for awarding attorneys' fees was the State Leases themselves as they provide:

> [l]essee hereby agrees to be liable for…costs and expenses…under any theory including…contract…including attorneys' fees and other legal expenses, including those…that may arise out of or be occasioned by [l]essee's breach of any terms or provisions of this Agreement.[47]

The Court finds no manifest error of law exists as to the instant issue, as the GLO has consistently maintained its position that its recovery of attorneys' fees was based on a contract, pursuant to Texas Civil Practice and Remedies Code § 38.001(b), and the only possible recovery within the applicable contract, the State Leases, is the provision included *supra*.

---

[43] ECF No. 383 at 4.
[44] ECF No. 383 at 4-5; *Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 449-450 (Tex. App.-Austin 2023, no pet.).
[45] *Great Am. Ins. Co. v. AFS/IBEX Fin. Services, Inc.*, 612 F.3d 800, 807 (5th Cir. 2010) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006).
[46] ECF No. 375 at 27 (internal citations omitted).
[47] *See*, *e.g.*, ECF No. 270-1 at 7.

Lastly, Pearl asserts that it is manifest error for the Court to indicate that the GLO may obtain attorneys' fees beyond an offset only.[48] Specifically, Pearl asserts that (1) the GLO voluntarily limited its breach of contract claim to setoff only and (2) affirmative recovery by the GLO on its breach of contract counterclaim is barred for the reasons provided in this Court's August 23, 2022, Memorandum Opinion. Nevertheless, the GLO limiting its breach of contract claim has no bearing on whether the GLO's recovery of attorneys' fees was based on the contract, which is independently authorized by Texas Civil Practice and Remedies Code § 38.001(b).[49] Furthermore, recovery of attorneys' fees is independent of affirmative recovery, it is the cost of collection and/or enforcement, not damages.[50] As such, the Court finds that no manifest error exists which prohibits the GLO from recovering its attorneys' fees.

Accordingly, the GLO's Objection to Reconsideration is sustained. Pearl's Motion to Reconsider is denied. The Court will next consider the Application for Fees.

**B. The GLO's Application for Fees**

Pursuant to this Court's February 28, 2025, Memorandum Opinion and Judgment, the GLO filed its Application for Fees, seeking a total of $632,887.75 in fees and expenses for a total of 1,579.1 professional hours in the instant adversary proceeding.[51] Acknowledging two payments made by Pearl to date in connection to previous awards in the amount of $23,216.14 and

---

[48] ECF No. 383 at 6.
[49] *See generally, Marre v. U.S.*, 117 F.3d 297, 304 (5th Cir. 1997) (analyzing attorney fee recovery under 26 U.S.C. § 7430, finding that attorneys' fees are not awarded out of prevailing party's damages, but on top of damages a prevailing party receives); *see also generally Plant v. Blazer Financial Services, Inc. of Ga.*, 598 F.2d 1357, 1365–66 (5th Cir.1979) (disallowing setoff by creditor for violation of Truth in Lending Act where debtor was awarded attorneys' fees under statute making creditor liable for "the costs of the action together with a reasonable attorney's fee as determined by the court").
[50] "Under Texas law, attorney's fees are recoverable as a cost of collection only if authorized by statute or contract." *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1037 (5th Cir. 2014) (citing *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)).
[51] ECF No. 391 at 7.

$26,417.19, the GLO asserts that it is contractually entitled to a full total of $583,254.42.[52] The fees are represented in the following chart:

| Requesting Entity | Category | Amount Requested |
|---|---|---|
| Office of Attorney General | Fees[53] | $292,812.50 |
| Ross, Smith & Binford ("*Ross & Smith Fees*") | Fees[54] | $348,963.00 |
| Ross, Smith & Binford | Costs[55] | $8,643.81 |
| **Total** | | **$650,419.31** |

Pearl's Objection to Fees asserts that the GLO cannot recover attorneys' fees because (1) the State Leases do not permit recovery; (2) because Texas Civil Practices and Remedies Code § 38.001 does not apply to Pearl Resources, an LLC; (3) the GLO failed to satisfy Texas Civil Practices and Remedies Code § 38.002's presentment requirements; (4) the GLO failed to establish that the fees were reasonable and necessary; (5) the time entries are impermissibly vague; (6) there was failure to segregate fees; (7) success was not achieved relative to the loss; and (8) the fees are not substantiated.[56]

Pearl's first objection contrasts with the plain language of the State Leases provided *supra*, and as such, is overruled.[57] Pearl's second objection was addressed *supra*, the recovery of attorneys' fees in this case are based on a contract which is expressly authorized under Texas Civil Practices and Remedies Code § 38.001.[58] Accordingly Pearl's second objection is overruled.

---

[52] *Id* ECF No. 391-2.
[53]
[54] ECF No. 391-3 Fees.
[55] ECF No. 391-3 Costs.
[56] ECF No. 392 at 1-16.
[57] *See*, *e.g.*, ECF No. 270-1 at 7.
[58] *Great Am. Ins. Co. v. AFS/IBEX Fin. Services, Inc.*, 612 F.3d 800, 807 (5th Cir. 2010) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006).

Pearl's third objection asserts that the GLO failed to satisfy Texas Civil Practices and Remedies Code § 38.002's presentment requirements; however, Pearl raises this argument for the first time in the instant objection.[59] Pearl was permitted the opportunity to raise this argument at trial, but Pearl did not do so, not even in Pearl's Motion to Reconsider.[60] Accordingly, because this objection is untimely, Pearl's third objection is overruled.

Pearl's fourth, fifth, sixth, seventh, and eighth objections can be consolidated as one overarching lodestar method objection, as each relates to applicable factors under the lodestar method.[61] "The Fifth Circuit employs the lodestar method in calculating attorneys' fees."[62] The lodestar is calculated by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work.[63] The lodestar is then adjusted up or down depending on the respective weight of the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*[64] The lodestar may be adjusted only as to those *Johnson* factors not already taken into account by the lodestar.[65] The four *Johnson* factors already reflected in the lodestar calculation are: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained from the litigation.[66] Bankruptcy courts wield "'considerable discretion' when determining whether an upward or downward adjustment of the lodestar is warranted."[67]

---

[59] ECF No. 392.
[60] ECF No. 353 ("Whether the Texas General Land Office's counterclaims: Breach of Contract; Trespass to Try Title; and recovery of attorney fees against Pearl Resources LLC and Pearl Resources Operating Co. LLC should be granted"); ECF No. 365; ECF No. 383.
[61] ECF No. 392 at 10.
[62] *In re Trevino*, 633 B.R. 485 (Bankr. S.D. Tex. 2021).
[63] *Transamerican Nat. Gas Corp. v. Zapata P'ship* (*In re Fender*), 12 F.3d 480, 487 (5th Cir. 1994).
[64] *Id.* (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).
[65] *Id.* (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 319-20 (5th Cir. 1993)).
[66] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012) (internal citation omitted).
[67] *Id.* (citing *Cahill v. Walker & Patterson, P.C.*, 428 F.3d 536, 540 (5th Cir. 2005)).

Pearl first asserts that all the fees incurred by the Office of the Attorney General in the amount of $292,812.50 ("*OAG Fees*") are too vague and generalized to determine whether the entries are reasonable.[68] The OAG Fees, stretching back as far as March 2021 consists of fifteen pages of time entries with basic descriptions for the activities including, *inter alia*: "reviewing/researching documents; conferring with AG personnel; drafting pleadings, preparing for deposition; [and] administration/admin activity."[69] The Court considers these entries as vague, and takes issue with the repeat instances of block billing.[70] Accordingly, Pearl's Objection to Fees is sustained in part, and the OAG Fees are reduced by 30% to $204,968.75.

Pearl next asserts that the OAG Fees, and Ross & Smith Fees should not be awarded due to failure to segregate.[71] Specifically, Pearl asserts that because fees were awarded solely for the GLO's breach of contract counterclaim, the GLO had an obligation to segregate fees associated with this claim from all other claims in the instant adversary proceeding.[72] In response, the GLO asserts that the legal services rendered for the GLO on all claims and counterclaims were necessary for the GLO to prevail on its breach of contract claim.[73] As examined *supra*, the State Leases provide the basis for the GLO's attorneys' fees, and the State Leases are clear that "attorneys' fees and other legal expenses, including those… that may arise out of or be occasioned by [l]essee's breach of any terms or provisions of this Agreement" are recoverable.[74] Each claim in the instant proceeding arises out of interpretation of the State Leases and as such, the Court finds that

---

[68] ECF No. 392 at 11.
[69] ECF No. 391-2.
[70] *See Trevino v. U.S. Bank Trust, N.A.* (*In re Trevino*), 648 B.R. 847, 883 (Bankr. S.D. Tex. 2023).
[71] ECF No. 392.
[72] ECF No. 392 at 13-14.
[73] ECF No. 395 at 4.
[74] *See, e.g.*, ECF No. 270-1 at 7.

segregation of fees was not required.[75] Accordingly Pearl's Objection to Fees as to this issue is overruled.

Pearl next asserts that the Court should limit or not award any fees because the GLO did not achieve success relative to their loss.[76] Although no proportionality requirement exists in the Fifth Circuit, this Court must nevertheless consider the GLO's overall success in determining the reasonableness of any attorneys' fee award, which may include consideration of the proportionality of the attorneys' fees sought to the damages awarded.[77] To determine whether to adjust the fee award where a plaintiff succeeded on only some claims, courts contemplate two questions: (i) "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?"; and (ii) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"[78] The GLO only achieved limited success in the instant proceeding, prevailing on its breach of contract claim in the amount of $2,578,633.[79] The GLO was unsuccessful on its sought declaratory relief, counterclaim for trespass to try title, and defense of prior material breach; furthermore, Pearl was successful on its counterclaims for Quiet Title, Trespass to Try Title, and breach of contract claim in the amount of $43,155,664.[80] Despite the factual interrelation between the successful and unsuccessful claims, the Court finds that the level of success realized does not justify expending a combined 1,579.1 professional hours on this case.[81] Accordingly, Pearl's Objection to Fees is sustained in part, the overall fees requested in the

---

[75] *See Varner v. Cardenas*, 218 S.W.3d 68 (Tex. 2007) (fees incurred in defending claim were necessary to recover on contract and thus, recoverable).
[76] ECF No. 392 at 15.
[77] *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018) (finding that the district court did not err in considering the relationship between the amount of the fee awarded and the results obtained).
[78] *Trevino v. U.S. Bank Trust, N.A.* (*In re Trevino*), 648 B.R. 847, 870 (Bankr. S.D. Tex. 2023).
[79] ECF No. 376.
[80] ECF No. 376.
[81] *See Trevino*, 648 B.R. at 872.

Application for Fees will be reduced by an additional 20% to account for the results obtained.[82] The Court shall reduce all fees by an additional 20% after all line-item reductions are deducted as discussed *infra*, resulting in a fee award of $163,975.00 in OAG Fees, and $279,170.40 in the Ross & Smith Fees.

Pearl's last objection is that the GLO seeks expenses in the amount of $8,643.81, but the GLO has not provided any substantiation for its expenses in the form of receipts, invoices, or contemporaneous records of the expenses.[83] The Court finds there are contemporaneous records as the Application for Fees includes specific, dated disbursements with descriptions such as, *inter alia*, "mileage from Austin to Houston (166 miles @ $0.67), foam board exhibits for trial, hotel charge, [and] parking in Houston during trial."[84] Nevertheless, a review of these expenses reflects that some reduction is warranted for lack of substantiation.[85] Accordingly, Pearl's Objection to Fees is sustained in part and the GLO's requested expenses are reduced by 30% from $8,643.81 to $6,050.67.

Accordingly, the outstanding fees, not including the final 20% deduction, are represented in the following chart:

| Request by | Fees/expenses requested | Total reduction | Total Following Reduction |
|---|---|---|---|
| Office of Attorney General Fees[86] | $292,812.50 | 30% | $204,968.75 |
| Ross, Smith & Binford Fees[87] | $348,963.00 | 0% | $348,963.00 |
| Ross, Smith & Binford Expenses[88] | $8,643.81 | 30% | $6,050.67 |

---

[82] *Id.*
[83] ECF No. 392 at 16.
[84] ECF No. 391-3.
[85] *See Trevino*, 648 B.R. at 902.
[86] ECF No. 391-2.
[87] ECF No. 391-2.
[88] ECF No. 391-3.

|  |  | Subtotal: | $559,982.42 |
|---|---|---|---|

The Court next accesses a 20% reduction on the outstanding fees and expenses to account for the results obtained as represented in the following chart:

| Request by | Total Following Initial Reduction | Total reduction | Total Following Final Reduction |
|---|---|---|---|
| Office of Attorney General Fees | $204,968.75 | 20% | $163,975.00 |
| Ross, Smith & Binford Fees | $348,963.00 | 20% | $279,170.40 |
| Ross, Smith & Binford Expenses | $6,050.67 | 20% | $4,840.54 |
|  |  | Final Award: | $447,985.94 |

As discussed *supra*, Pearl has made two payments in the amount of $23,216.14 and $26,417.19 which are deducted from the Final Award of $447,985.94, resulting in a total recovery of $398,352.61. However, because this Court determined *supra* that Pearl may recover $40,577,031 that was previously barred by sovereign immunity, the Final Award of $398,352.61 will be deducted from this recovery. Accordingly, Pearl may recover $40,178,678.40 from the Texas General Land Office.

### IV. CONCLUSION

An amended judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED June 27, 2025

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge